Council, I know you were here earlier. You heard me indicate our time frames here. And you also saw that we are familiar with the issues raised in the cases. We're anxious to have a dialogue with you about them. But we are concerned about keeping your remarks about in the area of a half hour. So when you begin, if you would identify yourself and tell us who you represent. Good morning, Your Honors, Counsel. My name is Brian McNeil, and I represent Cordello Freeman. May it please the Court. I have two issues I want to talk about this morning, the Court's violation of the rape shield statute, as well as the reliance on a factor inherent in the offense in sentencing Mr. Freeman. With regard to the rape shield statute, the trial court committed plain error where it knowingly allowed the state to violate the rape shield statute by introducing evidence concerning the complainant's sexual history. Specifically, the evidence was that VA, the complainant, had told her treating physician, Dr. Hannah, that she had never had sex before the alleged assault. First question for plain error is whether error occurred at all. And here it most definitely did, where the rape shield statute clearly bars this sort of evidence, subject to only two exceptions. Mr. McNeil, let's assume for the moment that the judge committed error. Why isn't it harmless in this case? In this case, the evidence against Mr. Freeman was actually pretty closely balanced. Closely balanced. You said, tell me why you think it was closely balanced. Because VA's account of the assault concerned a forcible encounter for between five and ten minutes of penetration. Whereas what Dr. Hannah also said was that the tear to VA's hymen was such that he would have expected a much larger tear had there been five to ten minutes. This is a 12-year-old girl. I mean, her under a stressful situation, is it reasonable to assume the jury may have assumed this, that she may have been confused about five to ten minutes? I think the one thing that everyone was clear on is that there was a recent tear to her hymen. I think that everybody agreed with that. So whether she made a mistake as to five minutes or whether it was only a minute, does that make the evidence closely balanced? I think it certainly casts a lot of doubt on the State's account. The State relied very heavily on VA's testimony. And this evidence was clearly in contradiction of that. There was also a lack of additional corroborative evidence, such as semen or DNA in the area. Despite the police's search quite extensively for such evidence, they couldn't find any. This strongly indicates that maybe she, apart from just exaggerating the amount of time of penetration, there should have been additional physical evidence. So wait a minute. So is it not a crime if he only penetrated a little bit? I mean, what does it matter whether it was a long time or a short time? Well, Mr. Freeman's defense was essentially just that this didn't happen. And insofar as the physical evidence contradicted what VA said, that this cast a lot of doubt on her testimony as well as the State's case in general. His submission would have been that this just didn't happen. And where the physical evidence contradicted what VA said, that makes the evidence pretty closely balanced. It was the care with her hymen, Mr. McNeil. And the doctor said that he, to a reasonable degree of medical certainty, that was consistent with a sexual assault. That's correct. But that's the offending evidence in this case, Your Honor. He stated that it was consistent with sexual assault because she said that she had never had sex before. That means that the evidence here really went right to the heart of the contested matter and made it a very important error here. Well, let me ask a different question. The rape shield statute is intended to protect the victim from harassment and casting aspersions on their reputation and that kind of thing. In this case, there was, in fact, by mentioning the victim's sexual history. In this case, there was, in fact, no sexual history. I mean, the sexual history is that there was none. There was none. Because this was a 12-year-old child who testified that she had never had sex before. So back to my original question, if we assume or if we agree with you that it's error, why isn't it harmless error? Because it's not as though the victims can certainly not be said to be impugned by testimony that a 12-year-old child has never had sex would not be found to be impugning, would you think? We'd certainly concede the State's argument that this doesn't get at the heart of the reason the rape shield was enacted. There's no question. However, our Supreme Court's cases on the subject have been quite clear that that just doesn't matter here. The statutory language is so crystal clear and the two exceptions are so crystal clear that you don't even get to the question of what the statutory intent was. It was an absolute violation and it was absolutely barred because neither of the two exceptions applied in this case. So is that an automatic reversal according to your argument? No, it's not automatic reversal. It's reversal because, as we just discussed, Justice Cunningham, the evidence in question was very damaging to Mr. Freeman because it helped the State prove its case against him. And that's, in this case, because of the conflicting evidence, it threatened to tip the scales of justice against him. There are certainly cases where the violation would be harmless error if the evidence is overwhelming, but this is not such a case. The evidence was very damaging. And it was additionally, excuse me, Justice Tice, did you have a question? I do in a minute, yes. Okay. Oh, just, it was additionally damaging to Mr. Freeman because cases like Sales and Kamblowski have found that evidence of this nature is inherently prejudicial. It inflames the passions of the jury against the defendant where the jury is told that the complainant had never had sex before. She's a victim of sexual assault. She's a victim of sexual assault. How do we factor in another section of the code, section 115-13, that states, in a prosecution for violation of section, including section 12-14.1 of the code, statements made by the victim to medical personnel for purposes of medical diagnosis or treatment, including descriptions of the cause of the symptom, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to diagnosis or treatment, shall be admitted as an exception to the hearsay rule? I think the most important phrase in that statute is, as an exception to the hearsay rule. The problem with this evidence in this case is not that it was hearsay or that it violated the hearsay rule. The problem is that there's a statute that specifically bars this kind of evidence. But there's a statute that specifically says this kind of statement, in a sex case like ours, to a medical treater shall be admitted. That's true. How do those statutes work together?  But I think the important thing, when you're construing the two of them together and trying not to do violence to either one, is that dash 13 was enacted specifically to deal with hearsay problems with regard to such evidence. There had been a lot of cases where such evidence had been admitted and it had been found improperly admissible because it violated the hearsay rule, and thus that statute was enacted. However, it doesn't really talk about the inherent harms in this kind of evidence, which is the reason that the rape shield statute was enacted. So we have to look at the public policy behind both of the statutes? Is that what you're saying? I think to some extent you do. However, I think that whereas there's a case that specifically talks about this type of evidence in the rape shield statute, I think that has to trump the hearsay statute, which is clearly dealing with different subject matter. That's a different concern at issue in that particular statute. The Supreme Court has not addressed this conflict, correct? In the case that you're talking about where they talk specifically about the rape shield act, they don't take this issue into consideration because it wasn't implicated in that case? Exactly. My research has not revealed any case that has dealt with that because I know that the State cited that statute in its response brief. However, the Santos and the Sandoval cases I think are what you really need to look at here, and they say the purpose of it does not matter, it doesn't matter who introduced it, it's absolutely barred unless it meets one of the two exceptions. Now, if the legislature wanted to go back to the drawing board and try to make these two statutes more clearly reconcilable with each other, it could certainly draft a third exception that says, you know, essentially see Section 13. However, it hasn't done that yet. Don't we have to kind of assume that the legislature knows what it's doing? That maybe it knows that here they passed this statute, here they passed that statute. Don't you think we have to assume that they're kind of thinking globally? I think the rules of statutory construction require that you try to read statutes in conjunction with one another and try to come out with something that, you know, upholds the purposes of both statutes. But in this case, the fact that the race shield statute deals so clearly with this type of evidence and was clearly enacted to deal with it, I think that trumps the hearsay rule exception because that was dealing with a completely different issue that is not implicated in this case. Until the legislature says otherwise, the Santos case in particular shows very strongly that this evidence must be barred. With regard to the second prong, that also warrants reversal as well. Here we have a case where the legislature enacted a very specific statute to keep evidence like this out, and even the trial court and the prosecutor indicated below that they knew that that was the case and they knew that under this statute this evidence should not have come in. Did you find any of that kind of odd? I did find it rather striking. Including, let's be honest, defense counsel. That's true, Your Honor. Everyone there said this violates the statute, so therefore let's admit it. The judge said that's what he was going to do. The state went along with that. The defense went along with it. Fine. It violates the rape shield. That's good. Let's admit it. It was rather alarming, the fact that everyone stood mute in this. Well, defense counsel stood mute and the trial court and the prosecutor specifically said it violated that. That's why I think this is a unique case that warrants second prong reversal. Mr. Freeman clearly didn't get a new trial under these circumstances because the evidence prejudiced him, and the second prong also implicates protecting the integrity of the judicial process. And in this kind of situation where the trial court is picking and choosing which statutes it wants to follow, I think that you cannot say that the integrity of the judicial process looks very good in this situation. Accordingly, we ask that you would reverse Mr. Freeman's conviction under either prong of plain error. With regard to sentencing, the court also erred in relying on a factor inherent in the offense in this case, specifically B.A.'s age, which was in fact an element of the offense. Nevertheless, the court mentioned B.A.'s age 14 times at sentencing, in addition to four other times in denying his motion for a new trial. Now, the state has correctly noted in its response brief that the court also mentioned additional appropriate factors, but it didn't rely on these factors 14 times. The clear focus in the court's mind at sentencing was B.A.'s age, which was an improper factor. We can't know precisely how much weight the court gave this factor at this point because it didn't say so, but its constant repetition indicates that it was rather significant. The appropriate remedy under which people be conned over in similar cases is to remand the cause for resentencing to make sure that Mr. Freeman gets a sentence that is based on the proper factors and not on a factor inherent in the offense. Accordingly, we ask that if Your Honors decline to reverse Mr. Freeman's conviction, you remand the cause for resentencing.  Thank you, Counsel. Thank you. Thank you. Good morning, Your Honors. May it please the Court, I am Assistant State's Attorney Micah Schluness on behalf of the people of the State of Illinois. This case primarily does not invoke a rape shield statute question because defendant forfeited this argument when he objected to the admission of this evidence on the specific ground that it was a Sixth Amendment violation under Crawford. Out of an abundance of caution, the trial judge sought to rectify the error by allowing defense counsel to recall the victim and allow her to be subject to cross-examination about the statement that she had not had sex with anyone prior to the incident that occurred and defense counsel waived the ability for the victim to be recalled. Therefore, defendant has forfeited this argument, and this Court should not reach rape shield as a potential violation. However, assuming this Court does think that rape shield has been invoked by the questions raised by defendant, in this situation, it does not rise to the level, if an error was committed, of plain error. What about your opponent's argument regarding the conduct of the trial judge who, your opponent argues, really actively injected himself into the argument that although everyone acknowledged that this was a violation of the rape shield law, let's go ahead and allow it anyway. Does the judge's conduct play any role in whether or not we should apply forfeiture? Your Honor, no, not in this case, because although the judge did concede in that statement that the rape shield statute was being violated for the specific purpose that the evidence was being sought to be admitted by the prosecution in this case, it was not a violation of the rape shield statute. For the limited purpose of lending credence to the medical... Before we move on, let's see if we can answer this question. The judge says it's a violation of the Rape Shield Act. It's part of the diagnosis. You can bring it up. How do we deal with that? The judge is saying, I am acknowledging this is wrong. This evidence should not be admitted. Therefore, I'm going to allow it in. What do we do with that? It's because, as was previously stated, we do have a situation of competing statutes. The rape shield statute versus the statute which allows the testimony for the purpose of medical diagnosis. And the two statutes need to be read harmoniously in this case. One cannot preclude the admission of the evidence where the purpose of the admission of the evidence is to lend credence to the existence of rape shield, which was not to completely forestall the victim's interest, but to seek justice for the victim while at the same time balancing that against defendant's constitutional rights. Did the state ever argue this is admissible under the treatment diagnosis exception? Yes. The prosecution stated that that was going to be the purpose of its admission, that it had come to her knowledge when she was preparing the witness that he was going to make this statement. And then she says, but I know this violates the Rape Shield Act. She's not arguing, Judge, this is admissible under this other statute, correct? She's not plainly admissible under this statute, correct. So let's be real honest when we're talking about forfeiture and what the defense counsel did. The state certainly didn't say to the judge, this, while there are rape shield implications, there's also a different statute under which this is admissible, correct? The state didn't do that either. Correct. You made that. I'm not even sure you really made it in your brief, but let's say that's an issue that's before us now. Well, yes, because the statute should be read harmoniously. And I did argue that for the purpose that the evidence was being sought as admissible in this case, which was as part of Dr. Hanna's diagnosis, that it did not invoke the rape shield statute. Now, correct that that was not the argument that was made by the prosecutor or stated by the trial court at the time that the hearing was taking place. However, that was the purpose of the admission of the evidence. The prosecution didn't dwell on it. It wasn't brought in front of the jury to inflame their passions. It wasn't brought out to say that the victim was a virgin prior to her encounter with this defendant. It was strictly brought out to say there was no prior sexual contact between this victim and any other person that would otherwise explain the presence of a tear in her hymen. Dr. Hanna clearly explained during his testimony. However, under Sandoval, we know it is barred by the Rape Shield Act. Would you agree with that? Or you don't agree with that? Under Sandoval, strictly speaking, it is. But under Santos, the Supreme Court allows that there are exceptions for when this sort of evidence should be admissible, especially where it tends to lend credence to the diagnosis in a rape case. As dicta, Santos states that there are several different jurisdictions that allow the admission of testimony for medical diagnosis. And in this case, the victim's state of the torn hymen is a perfect example of why that particular evidence should be admitted for the limited purpose, which is why the judge attempted to limit the purpose of the admission by saying don't dwell on it. And the prosecution did not dwell on it. It was, again, not brought in front of the jury for the sole purpose of inflaming their passions to state that this victim was pure and this defendant violated her. It was to state that there was no torn hymen before this incident occurred and now there is a torn hymen. And based on Dr. Hanna's testimony that such tears usually heal within a 72-hour period and that had it occurred prior to the alleged incident, there would have been a tag or a previous heal mark. So all of that went to state that the tear was consistent with the victim's account of a sexual penetration which had recently occurred. And that was the purpose of the admission of the evidence. Our rape shield statute doesn't have any limitations, for example, saying that the state can introduce this kind of evidence versus the defense. Correct? The federal rules do, right? Correct. And specifically, our legislature stood clear from that. And the cases have shown that the courts have interpreted the statute to say this statute applies to both sides. Absolutely. But for policy reasons, the purpose of the rape shield statute was not to limit the introduction of testimony which would state that a crime occurred. The purpose was, again, to balance justice in this case for a child victim against the defendant's right to a fair trial. And by suggesting that the evidence would just be plainly inadmissible under a very narrow reading of that statute would be to bar any relevant evidence from coming in wherever it doesn't fit into the two narrowly crafted exceptions which are listed under the statute. But isn't that what Sandoval has been telling us? Unless it falls within those two, it's barred under that statute. Do not look, this is plain language, unambiguous, end of discussion. However, the case law that follows Sandoval states there are situations in which the statute can't be read as narrowly as Sandoval interprets it to be. And there are situations in which the defendant's rights, and typically the case law falls on the side of allowing the defendant to introduce evidence of the victim's prior sexual history in order to balance his right to a fair trial. There's not been a situation where we're asking for the evidence to be admitted to balance the victim's right to a fair trial as we are here. And that is the purpose. But that's not the, that idea is not one of the exceptions that the legislature has stated in the statute, correct? Not generally speaking. It does not fall within the two parameters. But in this case, the evidence wasn't closely balanced. Notwithstanding the evidence of the tear, we don't have a situation where the evidence was closely balanced. There was an eyewitness to the assault. There was an immediate outcry to two different individuals. And the defendant himself confessed to the police when he was arrested. Now granted, defendant's theory of the attack as it occurred to the police is different than the theory that was presented at trial. However, the defendant did admit to penetration of the trial victim. Which in this case, the defendant was charged with predatory criminal sexual assault. So notwithstanding the evidence of the pre-existing tear, there is no situation of closely balanced evidence, and defendant can't meet his burden under the first prong of plain error. As to the second issue, which defendant has raised, which is the sentencing argument, people don't believe that this was a case where the sentence was tainted by the trial court's mention of the victim's age. Once again, this was a predatory criminal sexual assault case. But isn't the victim's age an element of the offense, counsel? No, it is an element of the offense, absolutely. And as your opponent pointed out, if you read the transcript of the trial judge's comments during the sentencing hearing, he really, he repeatedly comes back to the fact that this victim is 12 years old. In the space of one paragraph, he says it, I counted when I was reading it, he says it maybe seven or eight times. So is it reasonable to infer from that that the age was a factor that was really very front and center in his thinking as he made out the sentence? I don't believe it was, actually, Your Honor. Contextually, if you read the entire sentencing, and although the trial judge does return to the age when he's mentioning it, it's almost used as a, not almost used, but it is a bolster for the reasoning that he actually is. The victim will have a substantial time to recover from the incident that occurred because she was 12 at the time. The defendant had a prior criminal history. He had two felony convictions, one of which was for unlawful restraint. I understand, though. I'm just asking specifically about the narrow question of the age. He mentioned the age a lot during his comments, and your opponent says it's reasonable to infer that he considered that a factor in sentencing, and that's improper. And I'm asking you, why is your opponent wrong in making that argument, given the number of times that the judge mentioned 12 years old during his comments? It's not improper for him to mention her age, Your Honor, but to rely on her age as the sole basis for imparting the sentence would be because it is an element of the offense, but there is no suggestion. Well, I think we can assume that he's not going to say very plainly, I'm relying on her age in enhancing the sentence. I think what your opponent is saying, that the very injection of the age threaded throughout the comments by the court was sufficient to establish that the judge did, in fact, consider the age as a factor in imposing a sentence. And at the same time, Your Honor, the defendant was given a sentence that was 18 years below the maximum sentence for this offense and only six years above the minimum. So it's plausible to assume that the judge could not just completely ignore the victim's age when he was speaking. It was the only offense with which the defendant was charged in this case. There wasn't a laundry list of sexual offenses. There was a single charge. It was for predatory criminal sexual assault. The defendant did not receive anywhere near the maximum sentence. There's no implication that this was used as an enhancement factor, which was the argument that frames the sentencing error that's raised in this case. It's just, yes, the trial court mentions it, but is it proper to assume that that was the only factor or a factor on which he relied in enhancing the sentence? There is no evidence to suggest that. Anything else? No, Your Honors. Then for these reasons and those contained in the people's brief, we ask that you affirm defendant's conviction for predatory criminal sexual assault. Thank you, Counsel. Thank you. Bellison. Counsel referred to the Santos case as allowing certain exceptions when it's appropriate for the statute. But if you read the Santos case carefully, it's really talking about the constitutional exception, which is specifically drafted into the statute. The state doesn't even argue that that exception applies here or that the other legislative exception applies. And the state also said that this evidence was brought up for a proper purpose, but it is consistently argued in its brief and today that the reason it brought this out was to help prove its case against Mr. Freeman. That shows that it was very harmful and helped tip the scales of justice against him. The state mentioned Freeman's statement at the police station. However, again, this was completely, it could not be reconciled with what VA said or what the state's theory of the case was. As such, if anything, it really just confused matters for the jury and didn't add much to the state's case. And with the second prong, once again, the court wasn't concerned with the conflict of statutes or whether the purpose of the statute was at issue here. It simply said, it's a violation, but you can go ahead and adduce it. This is a clear breakdown of the judicial integrity, and this court needs to act to make sure that that doesn't happen again. And finally, with regard to sentencing, the sentence was significant in this case. And this court would have to assume that despite mentioning VA's age 14 times in sentencing, the court didn't place any reliance on it at all. That's not an acceptable assumption or a reasonable assumption on this record. Thank you very much, Your Honor. Thank you, Counselor. We will take this case under advisory.